# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH S. STORIE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 10-cv-325-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Joseph Storie seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382(a)(3)(A). In accordance with 28 U.S.C. § 636 (c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9]. Any appeal will go directly to the Tenth Circuit Court of Appeals.

## Procedural History

Plaintiff's application for supplemental security income benefits was filed on March 3, 2006, alleging a disability onset date of January 15, 2002. Plaintiff later amended his onset date to March 3, 2006. The relevant adjudicated period is from March 3, 2006 to September 25, 2008. Plaintiff's application was initially denied on May 17, 2006 and again upon reconsideration on April 25, 2007. A hearing before Administrative Law Judge ("ALJ") Richard Kallsnick was held September 5, 2008. On September 25, 2008, the ALJ entered his decision which is the subject of this appeal. The Appeals Council denied request for review on March 26,

1

2010. The decision of the appeals council represents the Commissioner's final decision for purpose of further appeal. 20 C.F.R. § 416.1481.

## Issues on Appeal

Plaintiff contends the decision of the ALJ should be remanded with instructions or that plaintiff should be awarded benefits because:

1. The ALJ failed to perform a proper step five analysis.
2. The ALJ failed to perform a proper credibility analysis.

## Background

Plaintiff was born in 1972 and was 34 years old when he filed his application for SSI. He was 36 years old at the time of hearing. Plaintiff is considered a "younger individual" according to 20 C.F.R. §416.963(c). He has a high school education.[1] (R. 42-44). Plaintiff's work experience includes employment as a carpenter and construction worker.[2] (R. 17, 28, 108-109). Plaintiff claims that anxiety prevents him from working, because it is hard for him to be around other people. (R. 26). In 2000, plaintiff was incarcerated for 11 months on a probation violation related to a drug possession charge. (R. 16, 26). Plaintiff indicated that he had problems with controlled substances in the past but claims that he has not used drugs in a number of years. (R. 16, 26, 28, 44-47).

At step one of the five step sequential process, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 3, 2006. (R. 14, 20 C.F.R. § 416.920(b)). At step two, the ALJ found plaintiff's severe impairments to be Bipolar Disorder, Panic Disorder with Agoraphobia, Post Traumatic Stress Disorder (PTSD), and Polysubstance Dependence-

---

[1] During the administrative hearing, Plaintiff indicated that he participated in special education classes and that his teachers helped him graduate. (R. 42-44).
[2] His employment as a carpenter was under his wife's uncle's supervision (R. 46, 153).

2

Partially Sustained Remission. (R. 14, 20 C.F.R. § 416.920(c)). At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets the medical equivalent of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. If the claimant does not have a medically equivalent mental impairment, then a special technique is used to evaluate the severity of the mental impairments. 20 C.F.R. § 416.920(a). There are four broad functional areas to rate the degree of functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §416.920a(b)(2)(3). There must be at least two areas of 'marked' limitation to satisfy the "paragraph B" criteria. A marked limitation means more than moderate but less than extreme. The ALJ determined that plaintiff has moderate restrictions in activities of daily living, in social functioning, and in concentration, persistence or pace, and that plaintiff has experienced no episodes of decompensation. (R. 14, 15, 171).

The ALJ found plaintiff's mental impairments to be severe but concluded that plaintiff's mental impairments alone and in combination do not meet the medical equivalent of 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders). Thus, the ALJ determined plaintiff's Residual Functional Capacity ("RFC"). 20 C.F.R. § 416.920(d)(3). The RFC is the highest level at which a claimant can perform despite limitations from impairments. In determining the RFC, all of plaintiff's impairments must be considered. 20 C.F.R. §§ 416.920(e), 416.945. The ALJ found that plaintiff is able to perform a full range of medium work with nonexertional limitations, including: simple but not detail related tasks under routine supervision, no interaction with the general public, and can work

better alone with only intermittent and superficial interaction with coworkers and supervisors. (R. 15, 177).

At step four, the ALJ found that plaintiff is unable to perform his past relevant work as a carpenter or construction worker. At step five, the ALJ determined, based on the Vocational Expert's testimony, that plaintiff is able to adjust to other work that exists in significant numbers in the national economy and, therefore, is not disabled. (R. 18).

## **Discussion**

Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of no less than 12 months." 20 C.F.R. § 416.905(a), and 42 U.S.C. §423(d)(1)(A). Substantial gainful activity (SGA) is work that is both substantial and gainful. To have substantial work activity, the work activity involves doing a significant amount of physical and mental activities. 20 C.F.R. §416.972(a). Gainful work activity is work activity that is done for pay or profit. 20 C.F.R. §416.972(b). An individual will be considered to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C § 423(d)(2)(A). The claimant for disability benefits has the burden of proving that he or she is disabled. 20 C.F.R. § 416.912(a), 42 U.S.C. §423(d)(5). A five step sequential process has been implemented by Social Security Regulations to evaluate a disability claim. 20 C.F.R. § 416.920(a).[3]

---

[3] The five step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security

The role of the Court in reviewing a decision of the Commissioner is only to determine whether substantial evidence supports the decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

Plaintiff argues that the ALJ failed to perform a proper step five analysis for several reasons. First, plaintiff argues that the ALJ ignored the Mental Residual Functional Capacity (MRFC) assessment of Janice Smith, Ph.D., a state agency reviewing psychologist. The Court disagrees. In Dr. Smith's written assessment, she considered plaintiff's ability to understand, his ability to remember, his ability to sustain concentration and persistence, and his ability to socially interact and adapt, concluding:

> Claimant is able to understand, remember and carry out simple, but not detailed, tasks under routine supervision. He is able to complete a normal work day and work week and adapt to a work setting. He cannot relate effectively to the general public. He is able to work in a job situation in which he works primarily alone, with only intermittent and superficial interactions with coworkers and supervisors for work purposes.

(R. 177). In the RFC, the ALJ accounted for all of the limitations Dr. Smith identified in her assessment: "He can do simple, but not detailed tasks under routine supervision. He can have

---

Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

no interaction with the general public. The claimant can work better alone with only intermittent and superficial interaction with coworkers and supervisors. He is not currently on medication." (R. 15). Thus, plaintiff's argument fails.

Second, plaintiff argues that the hypothetical question posed to the VE failed to include the limitation that he is unable to accept instructions and respond appropriately to criticism from supervisors. The ALJ posed the following hypothetical:

> We have a 36-year-old male, 12th grade education, but he has some problems with reading, and I'm going to give him a limited ability to read, write, and use numbers . . . Let's for physically, this individual is not limited at all, but I'm - - for the purpose of the hypothetical, I'm going to limit him to medium, light, and sedentary work activity, full range . . . Now, he has been diagnosed as having affective disorder, anxiety-related disorder, personality disorder, as well as substance addiction disorder. Now, in that regard I'm going to give him certain limitations. He would be able to understand, remember, and carry out simple, but not detailed, tasks, under routine supervision. He would be able to complete a normal workday and workweek, and adapt to work setting. He could not relate effectively to the general public. He is able to work in a job situation in which he works primarily alone, with only intermittent and superficial interactions with coworkers and supervisors for work-related purposes.

(R. 49-50). Hypothetical questions need only reflect impairments that are set out in the evidentiary record. <u>Evans v. Chater</u>, 55 F.3d 530, 532 (10th Cir. 1995). The Court finds that the hypothetical sufficiently identifies plaintiff's limitations based on the record. In the MRFC assessment by Dr. Janice Smith, plaintiff is identified as having a "moderately limited" ability to accept instructions and respond appropriately to criticism from supervisors. (R. 176). Plaintiff's moderate inability to accept instructions and respond appropriately to criticism from supervisors is accounted for in the hypothetical by the limitation that he is able to perform certain tasks under routine supervision and "with only intermittent and superficial interactions with coworkers <u>and supervisors</u> for work-related purposes." (R. 50) (emphasis added). "Intermittent and superficial interactions with coworkers and supervisors" accommodates any difficulty plaintiff has in that

6

area. "While the hypothetical question must set forth all the claimant's impairments, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." Fenton v. Apfel, 149 F.3d 907 (8th Cir. 1998). "The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision." Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000). "Because these findings are adequately reflected in the ALJ's hypothetical inquiries to the vocational expert . . . the expert's testimony provided a proper basis for adverse determination of this case." Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Thus, the hypothetical posed to the VE was not improper for the reason identified by plaintiff.

Third, plaintiff argues that the hypothetical failed to include plaintiff's illiteracy. This argument has no merit. The hypothetical includes plaintiff's "limited ability to read, write, and use numbers, giving him every benefit." (R. 49).

Fourth, plaintiff argues that the ALJ did not define what he meant by the terms "medium, light, and sedentary work activity." More specifically, plaintiff argues that the VE did not repeat the categories in order to indicate that she understood them. This argument also has no merit. The ALJ asked "are you familiar with the elements of medium, light, and sedentary as to lifting, carrying, sitting, standing, et cetera, et cetera?" to which the VE replied, "I am." (R. 50). Plaintiff's attorney did not further inquire about the VE's knowledge of the terms during the hearing. "When the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Hawkins v. Chater, 113 F.3d

1162, 1167 (10th Cir. 1997). In addition, none of the jobs that the VE identified for the plaintiff involve anything other than medium, light, or sedentary work. (R. 51).

Fifth, plaintiff argues that the hypothetical to the VE fails, because the ALJ did not prove that there are other jobs available for him. More specifically, plaintiff argues that the VE failed to identify jobs that would allow him to work alone. The hypothetical directed to the VE included the statement that plaintiff "is able to work in a job situation in which he works primarily alone." (R. 49). This restriction is consistent with the evidentiary record and the RFC. The evidence simply does not support an RFC that would require plaintiff to work entirely alone. From the hypothetical, the VE reported a significant number of jobs that plaintiff could perform.[4] The ALJ concluded that plaintiff would be able to work as: (1) a stock clerk (approximately 55,000 jobs regionally and 485,000 nationally); (2) a highway maintenance worker (approximately 30,000 jobs regionally and 286,000 nationally)[5]; (3) a handpacker (35,000 jobs regionally and 189,000 nationally); and (4) an assembler (22,000 jobs regionally and 187,000 nationally). (R. 18). Because the hypothetical adequately reflected the ALJ's RFC determination, the ALJ properly relied on the VE's testimony. Gay v. Sullivan, 986 F.2d at 1341.

Sixth, plaintiff argues that neither the ALJ, nor the state agency reviewers demonstrated the limitation of "concentration, persistence, or pace" in plaintiff's MRFC determination. This argument is also without merit. In the MRFC assessment, Dr. Janice Smith, the state agency reviewer, stated that plaintiff is "able to understand, remember and carry out simple, but not

---

[4] Medium Exertion Stock Clerk (DOT 922.687-058), Medium Exertion Highway Maintenance Worker (DOT 899.684-014), Light Hand Packers and Packaging Jobs (DOT 311.472-010), Light Office Cleaning (DOT 323.687-014), Sedentary Assembly Worker (DOT 732.6870014).
[5] During the VE's discussion of jobs, she referred to the job of a handpacker as having a DOT number of 311.472-010 (fast food worker) instead of DOT 920.587-018.

detailed tasks." (R. 15, 20, 177). The MRFC was adopted in the RFC and included in the hypothetical. Id. In the MRFC assessment, under the section "SUSTAINED CONCENTRATION AND PERSISTENCE," plaintiff is "not significantly limited" in the ability to maintain attention and concentration for extended periods. (R. 175). The only "markedly limited" section is plaintiff's ability to carry out detailed instructions. Thus, substantial evidence supports the ALJ's decision in this respect.

Finally, plaintiff argues that the ALJ ignored plaintiff's Global Assessment of Functioning (GAF) score. Plaintiff's GAF score ranges from 40-60. (R. 158, 186).[6] Plaintiff relies on the testimony of the VE who stated that an individual will not be able to sustain full-time competitive employment with a score between 40 and 45. A score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation), OR any serious impairment in social, occupational or school functioning." See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32, at 34 (Text Revision 4th ed.2000).

The Court finds that the ALJ did not err in failing to address plaintiff's GAF score. The Tenth Circuit has made clear that "a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. 33, 42 (10th Cir. 2007) (unpublished)[7] citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." Lee v. Barnhart, 117 Fed.Appx. 674, 678 (10th Cir. 2004) (unpublished). Dr. Rawlings, who gave the GAF score, did

---

[6] A GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).
[7] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

not indicate in any way that plaintiff could not work. Instead, he advised plaintiff to abstain from substances, attend AA/NA meetings, and apply for treatment. (R. 157). More importantly, the ALJ did take into consideration plaintiff's psychological evaluation which employs similar factors to those used to arrive at a GAF score. The GAF rates the social, occupational, and psychological functioning, which the ALJ properly took into account. Thus, particularly in this case, "the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities." Eden v. Barnhart, 109 Fed.Appx. 311 (10th Cir. 2004) (unpublished). In addition, the ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

Plaintiff argues that the ALJ used boilerplate language and failed to follow the factors set forth in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). The Court disagrees. In Rhodes v. Barnhart, 117 Fed.Appx. 622, 629 (10th Cir. 2004) (unpublished), even though the ALJ came close to using improper boilerplate language, the credibility determination was affirmed when the ALJ's "basic thrust" was supported by substantial evidence. See also Mann v. Astrue, 284 Fed. Appx. 567, 571 (10th Cir. 2008) (unpublished) (finding credibility determination adequate when ALJ discussed three points). Here, even though the ALJ used some boilerplate language, he fully discussed the factors used in determining the credibility of plaintiff, and he specifically set forth the evidence on which he relied.

The ALJ mentioned plaintiff's daily activities: "[he] did light chores but mostly just watched television, took naps, and talked on the telephone with his brother." (R. 16). The ALJ discussed the duration, location and frequency of intensity of plaintiff's pain or other symptoms: "[whenever] he leaves home, he feels anxious and is likely to have a panic attack. His bipolar disorder makes him susceptible to depression which can last for weeks at a time." (R. 16). The

ALJ mentioned factors that precipitate/aggravate plaintiff's symptoms: "[there] are allegedly no triggers for his panic attacks and he can never know when an attack will happen." (R. 16). The ALJ noted that plaintiff "was on no medications" and "[the] record indicates [plaintiff] has virtually no history of mental health treatment." (R. 16). The ALJ acknowledged plaintiff's reasons for declining to be involved in group therapy: "he did not feel he could cope being around 40-50 people. He did not feel capable of sitting in a room with other people." (R. 16). Finally, the ALJ mentioned the fact that plaintiff has no exertional limitations because of his ability to lift one-hundred pounds, and plaintiff's criminal record: "incarceration for eleven months on a drug possession charge. He claimed he had not used drugs for at least three years and that he had not used alcohol in a year." (R. 16).

The ALJ also cited plaintiff's failure to produce a longitudinal record by which to assess his impairments, "[by] not involving himself in treatment, the claimant has not provided a longitudinal record by which his impairments can be assessed." (R. 16). The ALJ based his credibility determination on this evidence, which is well supported by the record. The ALJ reasoned that "[without] treatment records, the only medical documentation available to the undersigned are the consultative evaluations of non-treating sources." (R. 17). Further, the ALJ relied on the consultative evaluations of Dr. Lee and Dennis Rawlings, Ph.D. Dr. Lee "found nothing remarkable and described the claimant having a normal physical examination (Exhibit 8F)" and in regards to Dr. Rawlings, "[except] for the administration of mental functioning tests, much of Dr. Rawlings' report consists of recording the claimant's own remarks about his behavior, his background, and his daily routine." (R. 17). The ALJ further noted that "Dr. Rawlings did not opine that the claimant was disabled or made unemployable by his impairments. Rather, he advised the claimant to abstain from substances, attend AA/NA

meetings, and apply to Family & Children's Services for treatment." (R. 17, 157). The ALJ relied on the fact that "[of] these three directives, Mr. Storie has allegedly stopped his drug and alcohol use although there is no verification of this. He does not seem to have made any effort to attend AA/NA meetings. And he, apparently, never advanced beyond his initial evaluation at Family & Children Services." (R. 17). The record firmly establishes, as the ALJ noted, that plaintiff did not involve himself in treatment. In the "Summary of Interpretive Findings" on the Family & Children's Services Treatment Plan, the prognosis of the patient is "good if [patient] begins and continues with current treatment plan." (R. 179). Plaintiff failed to do so. Thus, the ALJ's conclusion that plaintiff failed to provide a longitudinal record by which to assess his impairments is supported by substantial evidence and supports the ALJ's credibility determination:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7p at 7, 1996 WL 374186 (July 2, 1996).

The ALJ identified the specific evidence he relied on, and his credibility determination is supported by substantial evidence. The ALJ concluded that it is not unreasonable that plaintiff "has not performed as might be expected of an individual who truly wanted to overcome his impairments." (R. 17). Put simply, plaintiff is asking the Court to reweigh the evidence, something that the Court cannot do. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).

An ALJ's credibility findings warrant particular deference because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001).

The ALJ accurately set forth the relevant factors and thoroughly discussed plaintiff's complaints and alleged symptoms that he considered in assessing plaintiff's credibility. The ALJ further tied his credibility finding to specific evidence and explained why plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity." (R. 16). The ALJ complied with the standard in Kepler v. Chater, 68 F.3d 387 at 391 (10th Cir. 1995) by referring to and linking the specific evidence he is relying on to the credibility determination. The Tenth Circuit has made clear that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Qualls 206 F.3d at 1372.

As to plaintiff's specific allegations of error, none of have merit. First, plaintiff argues that the ALJ miscast the evidence of record by stating that plaintiff had "virtually no history of mental health treatment" and ignored the fact that plaintiff was seen on August 9, 2006. (R. 16). The ALJ did not miscast the evidence. As mentioned above, the ALJ noted that plaintiff went in for an initial interview with Family & Children's Services in 2006 but "nothing appears to have ensued after that point <u>aside for a physician's diagnostic evaluation</u> (Exibit 5F)." (R. 16) (emphasis added).

Second, plaintiff argues that the clinic would not make a telephone appointment with him. The record indicates that a clinician attempted to contact plaintiff in order to schedule a

follow up visit. Specifically, on August 14, 2006, "Clinician attempted to contact [plaintiff] to establish contact and follow up. The female who answered the phone reported that he was not in, but that she would give him the message that I called." (R. 194). On August 28, 2006, plaintiff "left a voicemail for clinician asking that clinician call him about his meds. Clinician attempted to contact him and left a message on [plaintiff's] machine." (R. 201). There is no indication of any other attempts made by plaintiff to contact the clinician.

Third, plaintiff argues that the ALJ ignored plaintiff's fear of leaving home. The record indicates that plaintiff was able to return on August 9, 2006 for the Physician's Diagnostic Evaluation and was out of his home both times clinician attempted to contact plaintiff.

Fourth, plaintiff argues that the ALJ failed to mention any of plaintiff's medications or the medications' side effects. More specifically, plaintiff argues that the ALJ ignored the fact that plaintiff's primary care physician treated his mental condition. The Court disagrees. Plaintiff saw his "treating physician," Dr. Herman, four times in 2004 and only one time in 2002. During the four visits in 2004, Dr. Herman prescribed three medications. Plaintiff complained of side effects with respect to two of those medications (Effexor and Abilify). The record does not indicate whether plaintiff even took the third prescribed medication (Zyprexa) or whether plaintiff experienced any side effects with it. During the hearing, the ALJ questioned plaintiff about his current lack of medications. Plaintiff testified that he was not currently taking medication, because "they tried to give me them pills that made me sick." (R. 47). In response, the ALJ said, "there are all kinds of, of medications that would help someone. But obviously, you're not on any medications, which makes me wonder why" and in response plaintiff stated that "[it's] just not going back. I just ain't found the right Doctor." (R. 47). Plaintiff's statement that he "just ain't found the right Doctor" implies that he was actively looking for the "right

14

doctor." But the record reflects otherwise, thus undermining his "medication side effects" argument. Further, Effexor was prescribed to plaintiff by a physician at Family & Children Services, but there is no indication that plaintiff took the medication, that plaintiff indicated to the physician that he was previously prescribed the medication, or that he reported any side effects. (R. 199).

In addition, Dr. Herman's physical report was not relevant to the ALJ's determination and the record does not support a finding that Dr. Herman was a "treating physician" in any event. Dr. Herman had limited contact with plaintiff, as mentioned above, and certainly did not have an ongoing physician/patient relationship with plaintiff. "Findings of a nontreating physician based upon limited contact and examination are of suspect reliability." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). Finally, even though the ALJ failed to mention the side effects of medication prescribed by Dr. Herman, the failure is harmless error. Harmless error occurs when, "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Based on the foregoing, the Court finds that the ALJ affirmatively linked his credibility findings to substantial evidence.

## **Conclusion**

For the above stated reasons, this Court finds that the ALJ did a proper step five determination and credibility assessment. This Court AFFIRMS the Commissioner's denial of Social Security Income Benefits.

SO ORDERED this 15th of June, 2011.

                                                          T. Lane Wilson
                                                          United States Magistrate Judge